CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

JUN 0 2 2006

JOHN F. CORCORAN, CLERK
BY: _____
    DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
### CHARLOTTESVILLE DIVISION

|  |  |
|---|---|
| UNION INSURANCE COMPANY, | CIVIL ACTION NO. 3:05-CV-00075 |
| *Plaintiff,* | |
| v. | |
| WILLIAMS CONTRACTING INC., | MEMORANDUM OPINION |
| RANDALL GARRETT, | |
| ROBIN GARRETT, | |
| and | JUDGE NORMAN K. MOON |
| CINCINNATI INSURANCE COMPANY, | |
| *Defendants.* | |

This matter is before the Court on (1) Plaintiff's Motion for Judgment on the Pleadings, filed February 17, 2006, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure; and (2) Defendant Cincinnati Insurance Company's Rule 12(b)(6) Motion to Dismiss, filed January 17, 2006. The Court heard arguments on these motions on May 1, 2006. For the reasons stated below, both motions have been converted to motions for summary judgment and will both be granted in an order to follow.

## I. BACKGROUND

### A. The Williams-Garrett dispute

In September 2002, Defendant Williams Contracting, Inc. ("Williams") and Defendants Robin and Randal Garrett (the "Garretts") entered into a contract for construction of a residence

1

at 1376 Hensley Drive, Mineral, Virginia (the "residence"). (Compl. ¶11; G. Answer ¶11; W. Answer ¶11). Williams began construction shortly thereafter, and the Garretts moved in to the new residence on or about September 26, 2003. (*Id.* ¶¶12-13; *Id.* ¶¶12-13; *Id.* ¶¶12-13). The Garretts complained to Williams about various issues concerning construction of the residence soon after moving in. (*Id.* ¶14; *Id.* ¶14; *Id.* ¶14). In a letter dated October 5, 2004, the Garretts, through their attorney, advised Williams of alleged structural problems with the residence.[1] (*Id.* ¶15; *Id.* ¶15; *Id.* ¶15[2]). In a follow-up letter to Williams dated October 14, 2005, the Garretts, again through their attorney, stated:

> Construction of foundation has resulted in structural problems, flooding, the development of and other matters complained of previously but not resolved; inadequate grading resulting in ponding of the yard and flooding of the basement, along with tree damage.

(*Id.* ¶16, Exh. 4; *Id.* ¶16; *Id.* ¶16[3]).

On October 18, 2005, the Garretts filed a Motion for Judgment in the Louisa County Circuit Court asserting five claims against Williams. *Garrett v. Williams Contracting, Inc.*, No. CL05004680-00 (Va. Cir. Ct. Louisa County Oct. 18, 2005) (the "state court action" or "Mot. for Judg.").[4] Count One alleges that Williams breached the construction contract "by its failure to

---

[1] None of the parties have submitted a copy of this letter to the Court.

[2] Williams acknowledges that the letter exists but denies any characterizations of the letter, which "speaks for itself."

[3] Williams acknowledges receiving the letter but denies that any of the alleged structural defects are anything more than allegations.

[4] At the May 1, 2006 hearing, counsel informed the Court that the Louisa County Circuit Court sustained a demurrer with respect to Counts Three and Five of the state court action, but granted leave to amend. The Court verified that the demurrer had been granted on April 17, 2006, through the online Virginia Courts Case Information system. As of May 31, 2006, the Garretts have not submitted an amended complaint. However, out of an abundance of caution and because the presence or absence of Counts Three and Five does not affect the outcome of

2

follow the original plans . . . and to perform the subject tasks of the Contract in a reasonable and workmanlike manner . . . ." (Mot. for Judg. ¶2). Count One enumerates approximately 27 instances of structural defects or damage allegedly caused by Williams, and demands "unspecified damages." (*Id.* ¶¶ 2, 7). At the May 1, 2006 motions hearing, counsel for the Garretts informed the Court that Count One does not include any claim for damages for the cost of regrading the land surrounding the residence or for replacing damaged vegetation, but rather includes damages only for Mrs. Garrett's personal injuries and for damage to the residence— which includes the foundation—itself.[5] *See also* (W. Memo. of Law in Opp., May 24, 2006, p. 5) ("[A]s the admissions by counsel for the Garretts demonstrate, the gravamen of their claims against Williams, the insured, are for negligence personal injury claims and for damage to the residence, including the foundation.").

Count Two alleges that Williams made false and misleading statements to the Garretts that the construction would be carried out in a workmanlike manner. Count Three incorporates the previous allegations and states that "Williams' behavior in carrying out the contract between the parties exhibited such reckless disregard for Garrett that it permits the recovery of punitive damages." Count Four alleges breach of the construction contract's warranty and breach of the implied warranties on new homes created by Virginia Code §55.70.1. Finally, Count Five

_____

this matter, the Court will discuss both below.

[5] "In deciding whether to dismiss, the court may consider only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which the judge may take judicial notice." 2-12 Moore's Federal Practice, Civil § 12.34 (2006 Supp. LEXIS). Thus, the Court may not consider this admission without first converting the 12(b)(6) and 12(c) motions into motions for summary judgment—as it has done. *See* p. 4 *infra.*

3

alleges that Williams breached its duty of care by constructing the residence in a manner which allowed mold to infest the basement, causing personal injury to Robin Garrett. (Mot. for Judg. ¶¶8-16).

### B. Williams' relationship with Union and Cincinnati Insurance Company ("Cincinnati")

Plaintiff Union Insurance Company ("Union") issued Williams Commercial General Liability ("CGL") insurance policies for three consecutive annual periods, starting August 18, 2002, and ending August 18, 2005. (Compl. ¶9, Exh. 1–3; W. Answer ¶9). Cincinnati replaced Union as Williams' CGL insurer, issuing Williams a policy with coverage commencing August 18, 2005. (12(b)(6) Mot. Exh. A; W. 12(b)(6) Resp. at 1).

### C. The present action, and conversion of Union's and Cincinnati's motions

Union filed this diversity declaratory judgment action on December 20, 2005, seeking a declaration that Union has no duty to defend or indemnify Williams in connection with any of the claims brought by the Garretts against Williams in the state court action. In the alternative, Union requests a declaration that to the extent Union does have any duty to defend or indemnify Williams, Cincinnati also has such an obligation and Cincinnati's obligation is primary to Union's. On February 17, 2006, Union filed a Motion for Judgment on the Pleadings pursuant to Rule 12(c), arguing that it has no duty to defend or indemnify Williams because its CGL policy provides Williams no coverage in connection with the Garretts' state court action.

On January 17, 2006, Cincinnati filed a 12(b)(6) motion, arguing that is has no duty to defend primary to Union's, because it also claims that its CGL policy does cover Williams' potential liability to the Garretts.

### II. STANDARD OF ANALYSIS

4

Rules 12(b) and 12(c) both provide in pertinent part that if "matters outside the pleading[s] are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." The "reasonable opportunity" clause is satisfied if the parties have actual notice that a motion to dismiss will be converted to a motion for summary judgment, and if the opposing party has an opportunity to file counter affidavits or to pursue reasonable discovery. *See Johnson v. RAC Corp.*, 491 F.2d 510, 513-14 (4th Cir. 1974); *Laughlin v. Metropolitan Wash. Airports Auth.*, 149 F.3d 253, 260 (4th Cir. 1998).

By Order dated May 15, 2006, the Court informed the parties pursuant to Rules 12(b)(6) and 12(c) that it would consider matters outside the pleadings, convert Union's and Cincinnati's motions to motions for summary judgment, and dispose of them as provided in Rule 56. The Court's Order satisfied the "reasonable opportunity" requirement by giving the parties ten days to contest its Order or present additional evidence. No objections were filed, nor additional evidence submitted, and thus the motions are deemed converted.

Summary judgment under Rule 56 is appropriate only when the Court, viewing the record as a whole and drawing reasonable inferences in the light most favorable to the nonmoving party, determines that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *see, e.g., Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–50 (1986); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). Under Rule 56(c), "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" may be considered in determining whether there exists a genuine issue as to

5

any material fact.  In addition to the particular forms of evidence listed in Rule 56(c), the Court

may consider any material that would be admissible at trial.  *See, e.g.*, *Horta v. Sullivan*, 4 F.3d

2, 8 (1st Cir. 1993);  *Aguilera v. Cook County Police & Corr. Merit Bd.*, 760 F.2d 844, 849 (7th

Cir.), *cert. denied* 474 U.S. 907 (1985).

### III. DISCUSSION

Both Union's and Cincinnati's policies insure against "those sums that the insured

becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to

which this insurance applies" and provides that they have a "duty to defend" the insured "against

any 'suit' seeking those damages."[6] (Compl. Exh. 3 §I, ¶A.1.a; Mot. Dismiss Exh. A §I, ¶A.1.a).

To determine whether a liability insurer has a duty to defend, courts apply the "eight

corners rule," meaning that they look solely to (i) the language of the insurance policy to

ascertain the terms of coverage and (ii) the allegations of the underlying action to determine

whether liability for any claims alleged therein are potentially covered by the policy. *American*

*Online, Inc. v. St. Paul Mercury Ins. Co.*, 207 F. Supp. 2d 459, 465 (E.D. Va. 2002); *see*

*Travelers Indem. Co. v. Obenshain*, 245 S.E.2d 247, 249 (Va. 1978).  "[W]hen the language of

an insurance policy is clear and unambiguous, courts do not employ rules of construction; rather,

they give the language its plain and ordinary meaning and enforce the policy as written."

*Partnership Umbrella, Inc. v. Federal Ins. Co.*, 530 S.E.2d 154, 160 (Va. 2000).

An insurer is relieved of its duty to defend "only when it clearly appears from the initial

---

[6] "'Suit' means a civil proceeding in which money damages because of a 'bodily injury', 'property damage' or 'personal and advertising injury' to which this insurance applies are alleged." (Compl. Exh. 3 §I, ¶18 (using the same language as §V of Cincinnati's policy except that it does not include the word "money"); Mot. Dismiss Exh. A §V, ¶21).

6

pleadings that the insurer would not be liable under the policy contract for *any* judgment based upon the allegations." *Reisen v. Aetna Life and Cas. Co.*, 302 S.E.2d 529, 531 (Va. 1983) (emphasis in original). If the language in an insurance policy is unclear or ambiguous, it must be construed against the insurance company and in favor of the insured. *Virginia Elec. and Power Co. v. Northbrook Prop. and Cas. Ins. Co.*, 475 S.E.2d 264, 270 (Va. 1996).

With these principles in mind, the Court now turns to Union's and Cincinnati's motions.

## A. **Union's Motion**

Union seeks a declaratory judgment that it owes no duty to defend or indemnify Williams, arguing that none of the Garretts' claims are even potentially covered by its policies.

(1) Policy Language[7]

(a) *Coverage*

As noted above, Union's policy covers "those sums that the Insured becomes obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." (§I ¶1.a). The "bodily injury" or "property damage" must be caused by an "occurrence" during the policy period. (§I ¶1.b(1),(2)). An "occurrence" is "an accident, including continuous or repeated exposure to substantially the same harmful conditions." (§V ¶13).

(b) *Exclusions*

Union points to several exclusions, which deny coverage for:

(1) "'Bodily injury' or 'property damage' expected or intended from the standpoint of the insured," *see* (§I ¶2.a);

---

[7] The coverage and exclusion provisions quoted below are from Union's Policy No. CPA 0010965-17, which covers the period from August 18, 2004 through August 18, 2005. (Compl. Exh. 3). None of the terms cited materially differ from Union's two previous policies covering Williams from August 18, 2002 through August 18, 2004. (*Id.*, Exhs. 1-2).

7

(2) "'Bodily injury' or 'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages . . . [t]hat the insured would have in the absence of the contract or agreement . . . ." *see* (§I, ¶2.b)[8];

(3) "That particular part of any property that must be restored, repaired, or replaced because 'your work' was incorrectly performed on it," *see* (§I, ¶2.j(6)); or

(4) "'Property damage' to 'your work'[9] arising out of it or any part of it . . . . This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor." *See* (§I, ¶2.l).

By special endorsement, coverage also does not extend to "[b]odily injury or 'property damage' . . . which would not have occurred but for the . . . alleged . . . inhalation of . . . exposure to, existence of, or presence of any 'fungi' or bacteria on or within a building . . . . [or] Any loss, cost or expenses arising out of . . . removing . . . or in any way responding to . . . 'fungi' . . . ." (*Fungi or Bacteria Exclusion*, ¶A(2)(a)). Fungi is defined to include mold. (*Id.* ¶C).

(2) <u>Application of the Eight Corners Rule to Count One</u>

The eight corners rule requires the Court to look at the terms of coverage of the commercial general liability (CGL) policy that Williams purchased from Union as well as the allegations of the Garretts' state court complaint to determine whether Williams' potential

---

[8] This exclusion includes another exception for liability "[a]ssumed in a contract or agreement that is an 'insured contract' . . . ." (*Id.* ¶2b(2)(b)). The term "insured contract" is defined at § V(9). Neither Williams nor the Garretts argue the residential construction contract is an "insured contract" under this definition.

[9] "Your work:
a. Means
  (1) Work or operations performed by you or on your behalf; and
  (2) Materials, parts or equipment furnished in connection with such work or operations.
b. Includes:
  (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your work', and
  (2) The providing or failure to provide warnings or instructions."
(§V ¶22).

liability for any claims alleged therein are covered by the policy.

Union maintains that the policy does not insure Williams for any damages the Garretts may recover in connection with Count One, because Count One involves damages that (a) arise from Williams' alleged breach of the construction contract, and thus are specifically excluded by the policy, and (b) do not arise from an "occurrence."[10]

The Court need not decide whether the alleged existence of multiple structural defects or damage to the residence constitutes an "occurrence," because it agrees that the CGL policy specifically excludes coverage for any potential liability Williams faces with respect to Count One. Although other exclusions found in Union's policy are also applicable to portions of Count One,[11] the "contractual liability" exclusion alone precludes any coverage for liability that Williams may incur. This exclusion denies Williams coverage for property damage which it becomes obligated to pay "by reason of the assumption of liability in a contract or agreement." (Compl. Exh. 3, §I, ¶2.b). Williams and the Garretts concede that in Count One the Garretts seek compensation only for damage to the residence, the plans for and building of which are addressed in the construction contract, and not for any possibly tortious damage to surrounding land or vegetation. Williams would have no legal obligation to the Garretts in connection with the residence in the absence of the construction contract; indeed, Count One itself specifically

---

[10] The happening of an "occurrence," which is defined "an accident, including continuous or repeated exposure to substantially the same harmful conditions," is a prerequisite for coverage under the policy. (§I ¶1.b(1),(2)); (§V ¶13).

[11] The exclusions for damage to property caused by Williams' incorrect performance of work "on it", or damage to Williams' "work" caused by any part of Williams' work also preclude coverage for much of the liability Williams faces in connection with the approximately 27 instances of damage or defects alleged in Count One. *See* (Compl. Exh. 3 §I ¶2.j(6), ¶2.l).

9

references the contract as the source of Williams' alleged liability:

> Williams breached the Contract by its failure to follow the original plans . . . and to perform the subject tasks of the Contract in a reasonable and workmanlike manner, thereby causing damage to Garrett as follows . . . . [listing defects].

(Mot. for Judg. ¶2). The contractual liability exclusion therefore precludes coverage.

This understanding of the scope of coverage provided by a CGL policy accords with prior decisions, which, because of the absence of a clear contractual liability exclusion like the one in this case, rely on varying rationales to exclude coverage for liability of a contractual nature. For example, in *Boiler Brick & Refractory Co. v. Maryland Cas. Co.*,[12] the Virginia Supreme Court considered whether a CGL insurer was obligated to indemnify its insured, a subcontractor that contracted to supply a burner for a new factory and furnish "start-up service" after the burner was installed and connected to the factory's boiler. The boiler exploded when the burner was first started, an event that the insured conceded triggered a contractual commitment on its part to supply a new boiler, rather than simply to pay the factory owner a sum sufficient to repair the damaged boiler. *Id.* at 101-02. Noting that under Coverage B of the CGL policy the insured was covered only for "sums which the insured shall become obligated to pay **because of** injury to or destruction of property,"[13] the Court held that the insured's liability for the second boiler was not covered because such liability "arises primarily out of contractual obligations." *Id.*

In *Hotel Roanoke Conference Ctr. Comm'n v. Cincinnati Ins. Co.*,[14] a case out of this

---

[12] 168 S.E.2d 100, 102 (Va. 1969).

[13] *Id.* at 102 (emphasis added).

[14] 303 F. Supp. 2d 784 (W.D. Va. 2004).

10

Case 3:05-cv-00075-NKM-BWC    Document 43    Filed 06/02/06    Page 10 of 15    Pageid#: 321

district, the court applied Virginia law to the question of whether an insured that had contracted to construct a hotel, and settled the hotel owner's claim for damages arising from the need to repair to the hotel's crumbling foundation, was entitled to reimbursement from its commercial liability insurer. The CGL policy in question apparently did not have a contractual liability exclusion, but did have a provision excluding coverage for liability "expected or intended from the standpoint of the insured." *Id.* at 786. Finding no controlling Virginia case on point, the court reviewed numerous decisions from other jurisdictions and held that "the better reasoned decisions conclude that when the insured poorly performs its contractual obligations damaging only the insured's work or product, the resulting contractual liability is 'expected'" and therefore excluded under the terms of its commercial general liability policy. *Id.*[15]

The principle underlying these decisions, and the Court's decision today, is elaborated upon in *Maryland Cas. Co. v. Reeder*[16]:

> Generally liability policies . . . are not designed to provide contractors and developers with coverage against claims their work is inferior or defective. The risk of replacing and repairing defective materials or poor workmanship has generally been considered a commercial risk which is not passed on to the liability insurer . . . . As one commentator explained:
>
>> This distinction is significant. Replacement and repair costs are to some degree within the control of the insured. They can be minimized by careful purchasing, inspection of material, quality control and hiring policies. If replacement and repair costs were covered, the incentive to exercise care or to make repairs at the least possible cost would be lessened since the insurance company would be footing the

---

[15] As an alternative grounds for its holding, the court also cited numerous decisions holding "that the word 'accident' as used in the definition of occurrence involves a degree of fortuity not present when the insured's defective performance of a contract causes injury to the insured's own work or product." *Id.* at 788.

[16] 221 Cal. App. 3d 961, 967-68, 270 Cal. Rptr. 719, 722 (Cal. App. 1990).

11

bill for all scrap. Replacement and repair losses tend to be more frequent than losses through injury to other property, but replacement and repair losses are limited in amount since the greatest loss cannot exceed the cost of total replacement. If the insured will stand these losses, insurance can be provided more cheaply since the company will be freed from administering many small claims for repairs, and it can set a rate for the more unusual risk of injury to property other than the contractor's work or product.

(citing Macaulay, *Justice Traynor and the Law of Contracts*, 13 Stan. L. Rev. 812, 822

(1961)) (internal citations omitted). *See also Am. Fire & Cas. Ins. Co. v. Doverspike*, 36 Va.

Cir. 263 (Va. Cir. Ct. 1995) (noting that a CGL policy covers accidents causing bodily injury

or property damage and "is not a performance bond. It does not cover poor workmanship.").

(2) Application of the Eight Corners Rule to Counts Two, Three, Four, and Five

Count Two states a claim for a statutory penalty of $1000 (and attorneys fees and

costs) due to Williams' alleged "false and misleading statements."[17]  Union's policy only

obligates it to pay those sums "that the insured becomes legally obligated to pay as damages

because of 'bodily injury' or 'property damage' to which this insurance applies."  Therefore,

under the clear and unambiguous terms of the policy, coverage does not extend to damages

an insured is obligated to pay "because of" fraud or misrepresentation. *Cf. Boiler Brick*, 168

S.E.2d at 102.

Count Three incorporates the allegations contained in Counts One and Two and

---

[17] Virginia Code § 59.1-200(b) prohibits "[m]isrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits.  Virginia Code § 59.1-204 states:

Any person who suffers loss as the result of a violation of this chapter shall be entitled to initiate an action to recover actual damages, or $500, whichever is greater.  If the trier of fact finds that the violation was willful, it may increase damages to an amount not exceeding three times the actual damages sustained, or $1,000, whichever is greater.

12

requests punitive damages for Williams' reckless behavior in carrying out the contract between the parties. Because punitive damages are imposed to punish egregious conduct, and to serve as an example to others, such damages cannot be said to arise "because of 'bodily injury' or 'property damage.'" Therefore, Williams' potential liability for such damages are not covered by the policy.[18]

Count Four states a claim of breach of the warranty provided in the contract between the parties, as well as the implied warranties on new homes created by statute. Virginia Code § 55-70.1 states:

> A. In every contract for the sale of a new dwelling, the vendor shall be held to warrant to the vendee that, at the time of the transfer of record title or the vendee's taking possession, whichever occurs first, the dwelling with all its fixtures is, to the best of the actual knowledge of the vendor or his agents, sufficiently (i) free from structural defects, so as to pass without objection in the trade, and (ii) constructed in a workmanlike manner, so as to pass without objection in the trade.

As already discussed, Union's policy excludes coverage for "'[b]odily injury' or 'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement," and thus Union has no duty to indemnify Williams for any damages it is legally obligated to pay by reason of warranties made by Williams in the construction contract. Similarly, the warranties implied in §55-70.1 only arise "by reason of" a "contract for the sale of a new dwelling," and thus are also excluded from coverage by virtue of the contractual liability exclusion.

Count Five states a claim for damages arising out of personal injuries to Robin Garrett

---

[18] Further, Count Three refers only to the allegations in Counts One and Two and adds no new allegations. Thus, any liability under Count Three would not be covered for the same reasons discussed above in reference to Counts One and Two.

13

allegedly caused by her exposure to a mold infestation in the basement of the residence, which infestation is allegedly due to Williams' faulty grading, unworkmanlike installation of pumps, and exposure of building materials to the elements. Union's policy explicitly excludes coverage for awards for personal injury caused by exposure to mold, and therefore Union has no obligation to indemnify Williams in the event that Robin Garrett recovers on Count Five. *See State Farm Lloyds v. Chandler*, 2005 WL 2467071 (E.D. Tex. Oct. 6, 2005) (applying fungus exclusion endorsement in insurance policy); *Alea London Ltd. v. Rudley*, 2004 WL 1563002 *3 (E.D. Pa. 2004) (not reported in F. Supp. 2d) (same).

## B. Cincinnati's Rule 12(b)(6) Motion to Dismiss

Union filed this action seeking a judgment declaring that it has no duty to defend or indemnify Williams, and to the extent it does, Cincinnati also has such an obligation, which is primary to its own. Cincinnati argues that dismissal is appropriate because (1) the "clear and unambiguous" terms of its CGL policy, which excludes coverage for "events, damages and injuries" occurring prior to the effective date of coverage,[19] demonstrate that it has no duty to defend or indemnify Williams, and (2) exclusions in its policy that differ in no material respect from those cited by Union also preclude coverage.

(1) Policy Language

Cincinnati's policy states that it "will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply." (12(b)(6) Mot. Exh. A, §I, Coverage ¶A.1.a). As does Union's policy,

---

[19] As noted *supra* at p.4, the effective date of the policy that Williams purchased from Cincinnati is August 18, 2005.

14

Cincinnati's excludes coverage for (1) "expected or intended injury"[20]; (2) contractual liability[21]; (3) damage caused by incorrect performance of "your work"[22]; and (4) damage to "your work" (with a subcontractor exclusion).[23] Also like Union's policies, Cincinnati's contains a "fungi or bacteria exclusion." (*Id.* "Fungi or Bacteria Exclusion Endorsements").

(2) Application of the Eight Corners Rule

All of the discussion in Part A *supra* pertaining to Union's motion applies with equal force to Cincinnati's, since all material terms and definitions in Union's CGL policy are identical to those found in Cincinnati's.[24] Therefore, the Court will enter a judgment that Cincinnati does not have a duty to defend or indemnify Williams that is primary to any duty to defend or indemnify of Union's.

An appropriate Order shall issue.

The Clerk of the Court is directed to send a copy of this Memorandum Opinion to all counsel of record.

ENTERED: _Norman C Moon_
U.S. District Judge
_6/2/06_
Date

_____

[20] (12(b)(6) Mot. Exh. A, §I(2), Exclusions ¶a).

[21] (*Id.* ¶b). As does the contractual liability exclusion in Union's policy, this provision excludes "'[b]odily injury' or 'property damage' for which the insured is obligated to pay by reason of the assumption of liability in a contract or agreement."

[22] (*Id.* ¶j(6)).

[23] (*Id.* ¶l).

[24] Thus, the Court will not address Cincinnati's first argument concerning the policy's exclusion of liability for damages that "occurred" prior to the effective date of coverage.

15